1
2
3
4
5
6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7

8    LISA Y.,

9                        Plaintiff,          CASE NO. C21-5207-BAT

10         v.                                **ORDER REVERSING AND REMANDING THE CASE FOR FURTHER PROCEEDINGS**

     COMMISSIONER OF SOCIAL SECURITY,

11

12                       Defendant.

13          Plaintiff appeals the ALJ's decision finding her not disabled. She contends the ALJ

14   erroneously rejected her testimony, and the opinions of Kimberly Wheeler, Ph.D., Margaret

15   Cunningham, Ph.D., and Benjamin Goold, M.D. Dkt. 14. Plaintiff also contends the Court should

16   remand the case for further proceedings because the removal provision contained in 42 U.S.C. §

17   902(a)(3) violates separation of powers. *Id.*

18          The Court finds the ALJ harmfully erred in discounting Dr. Goold's opinions regarding

19   Plaintiff's physical limitations and rejecting Plaintiff's testimony regarding her physical

20   limitations. The Court further finds the ALJ did not harmfully err in discounting Plaintiff's

21   testimony about the severity of her mental health symptoms, and the opinions of Drs. Wheeler

22   and Cunningham, and affirms the ALJ's determinations in this regard. While the ALJ's erroneous

23   decision to discount Dr. Gool's opinion provides the Court a basis to avoid addressing the

ORDER REVERSING AND REMANDING THE CASE FOR FURTHER
PROCEEDINGS - 1

1   separation of powers argument, the Court also addresses the Constitutional issue because it is an

2   important and recurring issue that has been raised in numerous other cases and should thus be

3   resolved. As discussed below, the Court concludes separation of powers is not a basis to remand

4   this case. Accordingly, for the reasons below, the Court **REVERSES** the Commissioner's final

5   decision and **REMAND**S the case for further proceedings under 42 U.S.C. 405(g).

## BACKGROUND

7   Plaintiff is 43 years old, has at least a high school education, and has worked as a gas

8   station attendant, stock clerk, and cashier checker. Tr. 1461–62. In September 2014, she applied

9   for benefits, alleging disability as of April 1, 2014. Tr. 361–66, 1438. Her applications were

10   denied initially and on reconsideration. Tr. 209–37, 240–69. On August 22, 2016, ALJ Kimberly

11   Boyce held a hearing at Plaintiff's request. Tr. 173–206. On November 2, 2016, ALJ Boyce

12   issued a decision finding Plaintiff not disabled. Tr. 26–43. The Appeals Council denied

13   Plaintiff's request for review. Tr. 1–4.

14   Plaintiff sought review of ALJ Boyce's decision before this Court. Tr. 1611–13. On June

15   5, 2019, United States Magistrate Judge J. Richard Creatura issued an order reversing the ALJ's

16   decision. Tr. 1637–53. Judge Creatura held the ALJ erroneously rejected the opinions of

17   examining psychologists, Dr. Wheeler and Dr. Cunningham, and two reviewing psychologists in

18   favor of opinions from non-examining medical consultants. Tr. 1637.

19   On remand, ALJ Allen Erickson held a hearing on November 19, 2020. Tr. 1476–1549.

20   ALJ Erickson issued a decision on January 13, 2021, again finding Plaintiff not disabled. Tr.

21   1438–63. The ALJ found Plaintiff lumbar spine congenital stenosis and degenerative disc

22   disease, major depressive disorder, generalized anxiety disorder, and posttraumatic stress

23   disorder ("PTSD") are severe impairments; Plaintiff has the residual functional capacity ("RFC")

to perform light work with additional postural, environmental, cognitive, adaptive, and social limitations; and Plaintiff can perform jobs in significant numbers in the national economy. Tr. 1441-1463. The Appeals Council did not assume jurisdiction, making the ALJ's decision the Commissioner's final decision. *See* 20 C.F.R. §§ 404.984(d), 416.1484(d).

## DISCUSSION

### A.    Plaintiff's Testimony

Plaintiff contends the ALJ erroneously discounted her testimony she cannot work because of major back problems, hand, knee, and back arthritis, anxiety, depression, PTSD, and migraines. Tr. 181, 403, 410, 1495, 1917. Plaintiff testified she can stand, walk, and sit for a limited amount of time, *see* Tr. 196–97, 1528, 1960, 1965, and could lift up to 10 pounds. Tr. 408. Plaintiff testified she has a hard time holding things because of pain in her hand. Tr. 1530. Plaintiff also testified she has anxiety, claustrophobia, difficulty concentrating, and PTSD, Tr. 186, 1532, 1536, and has anxiety attacks about four times a week. Tr. 194. She testified she gets migraines about once a week and must lay down in a dark room. Tr. 191, 1502, 1525.

Because the ALJ found Plaintiff presented objective medical evidence establishing underlying impairments that could cause the symptoms alleged, and no affirmative evidence of malingering, the ALJ was required to provide "specific, clear, and convincing" reasons supported by substantial evidence to discount Plaintiff's testimony as to symptom severity. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017).

The ALJ rejected Plaintiff's testimony about her physical limitations symptoms noting imaging of spine and joints showed mostly mild to moderate abnormalities, Tr. 792, 840, 842, 874, 1019–20, 1447, 2134, 2154, 2345, and that Plaintiff's exams were mostly normal. *See, e.g.*, Tr. 589–90, 607, 630, 651, 2133–34. These records do not preclude Plaintiff's pain complaints.

ORDER REVERSING AND REMANDING THE CASE FOR FURTHER
PROCEEDINGS - 3

1    Rather Plaintiff's treatment record documents consistent and long-standing pain complaints that

2    her doctors did not find unjustified and which they attempted to treat in various ways including

3    the use of narcotic pain medications. Although pain medications provided Plaintiff some relief,

4    the medications did not provide as much as the ALJ determined. The Court notes the ALJ stated

5    the mild to moderate imaging results are inconsistent with Plaintiff's testimony. But this is a

6    conclusory finding not supported by a medical opinion. Tr. 1447. This conclusory finding is also

7    at odds with the ALJ's determination Plaintiff's impairment could reasonably be expected to

8    cause some degree of the alleged symptoms. Tr. 1445. The Court thus concludes substantial

9    evidence does not support the ALJ's conclusion that the imaging results or exam results

10   contradict Plaintiff's testimony about the impact of her pain on her functioning.

11          The ALJ further noted Plaintiff declined treatment such as a cortisone injection in her

12   right knee because "she states the pain is not bad enough to warrant a cortisone injection." Tr.

13   2135. This one-time declination does not contradict Plaintiff's testimony that she has suffered

14   significant pain symptoms in other parts of her body for many years. Also, Plaintiff made this

15   statement during an examination in May 2018 focusing just on knee pain. This medical record

16   documents Plaintiff in fact had knee pain complaints and the medical source did not indicate

17   Plaintiff's declination of the cortisone shot established otherwise or that Plaintiff was overstating

18   her pain complaints.

19          The ALJ also erred in discounting Plaintiff's testimony on the grounds she received only

20   conservative treatment given her long use of hydrocodone. *See Kager v. Astrue*, 256 F. App'x

21   919, 923 (9th Cir. 2007) (holding the ALJ erred in finding plaintiff had not received significant

22   pain therapy when she was taking narcotic pain medications).

23

ORDER REVERSING AND REMANDING THE CASE FOR FURTHER
PROCEEDINGS - 4

1   Turning to Plaintiff's mental impairment testimony, the ALJ reasonably found Plaintiff's

2   claims were inconsistent with the overall medical evidence. The ALJ cited to numerous potions

3   of the record to support his conclusion that "while treatment providers have occasionally found

4   the claimant to have some level of impaired mental health functioning, many found her to be

5   mentally oriented and to demonstrate generally intact mental health functioning." Tr. 1448.

6   Plaintiff has failed to show harmful error in the ALJ's rejection of her testimony. *See Ludwig v.*

7   *Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012) (citing *Shinseki v. Sanders*, 556 U.S. 396, 407–09

8   (2009)) (party challenging an administrative decision bears the burden of proving harmful error).

9   Plaintiff has failed to show this was an unreasonable assessment of the record.

10   The ALJ gave other reasons to reject Plaintiff's testimony about her mental health

11   limitations that do not withstand scrutiny. But because the ALJ gave at least one valid reason for

12   rejecting Plaintiff's testimony, the inclusion of erroneous reasons is harmless. *Molina v. Astrue*,

13   674 F.3d 1104, 1115 (9th Cir. 2012) (quoting *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d

14   1155, 1162 (9th Cir. 2008)).

15   **B.      Dr. Wheeler's Opinions**

16   Plaintiff contends the ALJ erroneously rejected the opinions of examining psychologist

17   Dr. Wheeler. An ALJ must provide "specific and legitimate reasons that are supported by

18   substantial evidence in the record" to reject the opinion of an examining doctor when it is

19   contradicted. *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1996) (citing *Andrews v. Shalala*,

20   53 F.3d 1035, 1043 (9th Cir.1995)). Dr. Wheeler's opinions were contradicted by the opinions of

21   John Robinson, Ph.D., and Eugene Kester, M.D. *See* Tr. 218–20, 249–51.

22   Dr. Wheeler evaluated Plaintiff on September 18, 2015, Tr. 939–43 and opined Plaintiff

23   was markedly limited in her ability to understand, remember, and persist in tasks by following

1  detailed instructions, communicate and perform effectively in a work setting, and complete a

2  normal workday or week without interruptions from her psychologically based symptoms. Tr.

3  941.

4       The ALJ gave Dr. Wheeler's opinions little weight. Tr. 1459. The ALJ reasoned

5  Plaintiff's presentation during Dr. Wheeler's exam was inconsistent with her presentation at

6  other exams throughout the record, Dr. Wheeler's opinions were inconsistent with the overall

7  medical evidence, and Dr. Wheeler's opinions were inconsistent with Plaintiff's activities of

8  daily living. Tr. 1459–60.

9       The ALJ did not harmfully err in rejecting Dr. Wheeler's opinions. The ALJ reasonably

10 concluded Dr. Wheeler's opinions were inconsistent with the overall medical evidence. For

11 example, Dr. Wheeler found Plaintiff's memory, fund of knowledge, concentration, and

12 judgment were outside normal limits. Tr. 943. Yet other records reported Plaintiff had no

13 problems in these areas. *See, e.g.*, Tr. 548, 590, 1075, 1097, 1158, 2345, 2670, 2750, 3000.

14      Plaintiff contends the ALJ erred because the medical record supports Dr. Wheelers

15 opinions. However, even if the Court found Plaintiff's assessment is reasonable, the Court cannot

16 say the ALJ's assessment is unreasonable. Under the applicable standard of review, the Court in

17 this situation must defer to the ALJ's assessment.

18      The Court notes while the ALJ's analysis was not free from error, the errors are harmless.

19 The ALJ presented at least one good reason for rejecting Dr. Wheeler's opinions, and that reason

20 remains supported by substantial evidence regardless of the ALJ's other errors. The ALJ thus did

21 not harmfully err in rejecting Dr. Wheeler's opinions. *See Molina*, 674 F.3d at 1115.

22

23

1

### C.     Dr. Cunningham's Opinions

2     Dr. Cunningham evaluated Plaintiff on June 17, 2014, Tr. 516–27, and opined Plaintiff

3  had marked or severe social and cognitive limitations in nearly all basic work activities. Tr. 520.

4  The ALJ gave Dr. Cunningham's opinions little weight. Tr. 1458–59. The ALJ reasoned

5  Plaintiff's presentation during Dr. Cunningham's exam was inconsistent with her presentation at

6  other exams throughout the record, just as the ALJ had done with Dr. Wheeler's opinions. Tr.

7  1458. The ALJ also reasoned Dr. Cunningham's opinions were inconsistent with Plaintiff's

8  activities of daily living. Tr. 1458–59.

9     The ALJ did not harmfully err in rejecting Dr. Cunningham's opinions. In particular, the

10  ALJ reasonably concluded Plaintiff's presentation to Dr. Cunningham was inconsistent with her

11  presentation to her treatment providers and elsewhere in the record. Tr. 1458. For example,

12  Plaintiff presented to Dr. Cunningham as being unable to write a short sentence. Tr. 521. Yet, as

13  the ALJ noted, Plaintiff completed an eight-page adult function report, writing coherent

14  sentences in her answers. Tr. 403–10. Plaintiff presented to Dr. Cunningham as having thought

15  process and content, orientation, memory, fund of knowledge, concentration, abstract thought,

16  and insight and judgment all outside normal limits. Tr. 522. But Plaintiff's treatment providers

17  generally found normal performance in these areas. *See, e.g.*, Tr. 548, 574, 590, 1157–58, 2001,

18  2003, 2345, 2670, 2679.

19     Again, the ALJ's assessment of Dr. Cunningham's opinions was not free from error, but

20  any errors are harmless. The ALJ's valid reasons remain supported by substantial evidence

21  despite his errors, so those errors were inconsequential and harmless. *See Molina*, 674 F.3d at

22  1115.

23

### D.     Dr. Goold's Opinions

ORDER REVERSING AND REMANDING THE CASE FOR FURTHER
PROCEEDINGS - 7

1    Dr. Goold has been one of Plaintiff's treating providers since December 2015. Tr. 2126.

2  On March 17, 2017, Dr. Goold completed a physical functional assessment form, Tr. 2125–27, in

3  which he opined Plaintiff had exertional, postural, and reaching limitations, limiting Plaintiff to

4  sitting for four hours, standing for 20 minutes, and requiring the need to shift positions. Tr.

5  2125–26. The doctor opined Plaintiff could rarely lift 10 pounds, can never lift 20 pounds,

6  cannot stoop or bend and has reaching limitations. He opined Plaintiff would be off-task 20

7  percent of the workday due to needing to change positions to manage pain, and to attend

8  doctor/therapy visits. Tr. 2127. He opined Plaintiff would miss four days of work a month. *Id.*

9    The ALJ gave Dr. Goold's opinions little weight. Tr. 1454. The ALJ rejected Dr. Goold's

10  failed to explain the medical findings supporting his opinions and did not answer a question that

11  he explain a reason why he believed Plaintiff would miss work four days a month due to her

12  medical condition or treatment. Tr. 1454. Substantial evidence does not support the finding

13  because although Dr. Goold used a "check-box" form, he specifically indicated his opinion was

14  based upon "physical examinations," "Progress and office notes," and "X-rays, CT scans or

15  MRIs." Tr. 2127.

16    The ALJ also rejected Dr. Goold's opinions as inconsistent with the course of Plaintiff's

17  treatment and medication; her lack of acute distress at most examinations; Plaintiff's denial of

18  headaches at most exams; and her "robust range of activities," including driving a car,

19  performing household chores, cleaning her garage, and operating a lawn mower and doing

20  laundry." Tr. 1454. Substantial evidence does not support the finding. The record shows Plaintiff

21  has long suffered from pain. While narcotic pain medications have helped Plaintiff's symptoms,

22  there is no indication her medications or PT have diminished her pain to the point that Plaintiff

23  can function at the level the ALJ found. Hence, while the record indicates that it was noted

ORDER REVERSING AND REMANDING THE CASE FOR FURTHER
PROCEEDINGS - 8

1    Plaintiff presented at exams without acute distress or headaches, the record does not establish

2    that Plaintiff was not suffering from significant pain symptoms which her medical providers

3    tracked and attempted to treat throughout the relevant years at issue.

4             Additionally, the ALJ found Plaintiff's activities contradicted the doctor's opinions citing

5    to various portions of the record. Some portions do not address Plaintiff's daily physical activity

6    (e.g., 7F/3 and 7 mental health records; 10F/2, 36F/14, mental health; 12B, fee agreement, 13B

7    Appointment of representative; 15B Fee Agreement; 21B Fee agreement; 23B Appointment of

8    representative; 24B, representative fee agreement; 25B, appointment of representative; 23F/26,

9    mental health record; ). Further some portions support rather than contradict Dr. Goold's

10   opinions (e.g. 34E, Plaintiff's adult function report; 31E/4-5 can drive but does not alone;

11   30F/40, constant back pain that improves with medication; 30F/57, medications help but has

12   radiating back pain, and has tried PT and injection without improvement; 29F/26, stable to

13   slightly worse pain, ok with medication; 29F/30, able to clean house generally but pain is

14   progressive; August 2016 hearing testimony, mom planned a small wedding, has a driver's

15   license, husband cares for Plaintiff helping her put socks on, has a chair in shower, and

16   medications make Plaintiff sleepy; 37/33, patient in pain distress, prescribed opioids; 9F/3,

17   patient has stabbing pain, not using therapy, using opioid medication; 26F/21, slowly able to get

18   back to housework but still has a fair amount of pain on waking and after being in car; and

19   28F/2, Plaintiff drove to examination; 23F/26.)

20            The ALJ also rejected Dr. Goold's opinions on the grounds they were inconsistent with

21   imaging results showing mostly mild to moderate abnormalities. Tr. 1454. The imaging results

22   alone do not contradict Dr. Goold's treatment records that Plaintiff has long suffered from pain

23   which at times interfere with her ambulation and ability to perform other activities and which

require narcotic pain medication. No doctor opined the imaging results contradict the level of pain Plaintiff indicated she suffered. Dr. Goold ostensibly was aware of the imaging results and did not indicate they were inconsistent with the Plaintiff's pain complaints. While the ALJ concluded otherwise, the ALJ provided no explanation as to why the ALJ's assessment of the evidence, rather than Dr. Goold's was correct. *See Embrey v.* Bowman, 849 F.2d, 418, 421-22 (9th Cir.1988) ( ALJ must do more than offer his own conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct."). Accordingly, the Court concludes the ALJ harmfully erred in discounting Dr. Goold's opinions.

### E.      Separation of Powers

Removal of the Commissioner of Social Security is governed by 42 U.S.C. § 902(a)(3). Under § 902(a)(3), the Commissioner may only be removed from office "pursuant to a finding by the President of neglect of duty or malfeasance in office." *Id.* Plaintiff contends § 902(a)(3) violates separation of powers under Article II of the United States Constitution, and therefore the Commissioner's final decision denying Plaintiff benefits was made by individuals who lacked valid delegated authority to make the decision.[1] Dkt. 14 at 4-5; Dkt. 29 at 9-11. Plaintiff's argument relies upon the Supreme Court decisions in *Seila Law LLC v. Consumer Financial Protection Bureau*, 140 S. Ct. 2183 (2020), and *Collins v. Yellen*, 141 S. Ct. 1761 (2021).

---

[1] Plaintiff also suggests § 902's infirm removal clause is similar to an appointments clause violation under *Lucia v. S.E.C.*, 138 S.Ct. 2044 (2018). Dkt. 29 at 10. Although Plaintiff does not specifically argue § 902 violates the appointments clause, the Court addresses what may be a recurring argument and finds under the circumstances of this case, the appointments clause was not violated. The ALJ who decided Plaintiff's case was appointed by then-Acting Commissioner Nancy Berryhill. *See* SSR 19-1p, 2019 WL 1324866, at *2 (Mar. 15, 2019). Defendant correctly contends Ms. Berryhill, as Acting Commissioner, was properly appointed and not subject to § 902's removal clause. The ALJ who issued the decision here was thus properly appointed by Ms. Berryhill. Also, § 902's removal clause is its only defect, just as removal was the only defect identified in *Seila Law,* 140 S. Ct. at 2209 and *Collins,* 141 S. Ct at 1793 ("The Appointments Clause does not help the shareholders either.") (concurring opinion of THOMAS J.). The Court accordingly concludes there is no appointments clause violation in this case.

ORDER REVERSING AND REMANDING THE CASE FOR FURTHER
PROCEEDINGS - 10

1    In *Seila Law*, the Supreme Court held the Consumer Financial Protection Bureau's

2 ("CFPB") removal structure limiting the removal of the CFPB Director by the President only for

3 "inefficiency, neglect of duty, or malfeasance of office," 12 U.S.C. § 5491(c)(3), violated

4 separation of powers. *Seila Law*, 140 S. Ct. at 2197. In *Collins* the Court held a provision

5 limiting the President to removing the Directors of the Federal Housing Finance Agency

6 ("FHFA") only for cause violated the separation of powers. *Collins*, 141 S. Ct. at 1783 (holding

7 *"Seila Law* is all but dispositive").

8    A straightforward application of *Seila Law* and *Collins* dictates a finding that §

9 902(a)(3)'s removal provision violates separation of powers. As in *Seila Law* and *Collins*, the

10 Social Security Commissioner is a single officer at the head of an administrative agency and

11 removable only for cause. *See* 42 U.S.C. § 902(a)(3). Section 902 thus has the same infirmity as

12 the removal provisions at issue in *Seila Law* and *Collins*. The Court accordingly concludes §

13 902(a)(3) violates separation of powers. *See Seila Law*, 140 S. Ct. at 2197; *Collins*, 141 S. Ct. at

14 1783.

15    In her reply brief, Plaintiff suggests § 902 may be constitutional because "in *dicta*, the

16 *Seila Law* court even questioned whether § 902(a)(3) was unconstitutional." Dkt. 29 at 8. The

17 *Seila Law* Court noted differences between the SSA and CFPB but did not find the differences

18 rendered § 902(a)(3) constitutional or rendered CFPB's removal limitation unconstitutional. *See*

19 *Seila Law*, 140 S. Ct. at 2202. The *Collins* Court clarified "Courts are not well-suited to weigh

20 the relative importance of the regulatory and enforcement authority of disparate agencies, and we

21 do not think that the constitutionality of removal restrictions hinges on such an inquiry." 141 S.

22 Ct. at 1785. This clarification precludes the possibility § 902(a)(3) is constitutional based upon

23 *dicta* in *Seila Law*.

ORDER REVERSING AND REMANDING THE CASE FOR FURTHER
PROCEEDINGS - 11

1    Having concluded §902(a)(3)'s removal provision violates separation of powers, the

2    Court turns to the parties' dispute over the proper remedy. Plaintiff contends under *Seila Law* and

3    *Collins*, the remedy is reversal because the § 902's removal clause renders the Social Security

4    Administration's structure unconstitutional, and "the Commissioner had no authority to delegate

5    leaving the ALJ here and the Appeals Council without any authority . . . to make findings of fact

6    and issue decision as to benefits eligibility." Dkt. 14 at 5. In her reply brief, Plaintiff amplifies

7    this argument arguing Presidential power over an agency is "like water flowing" and §

8    902(a)(3)'s infirm removal clause "stops the flow of authority such that the Commissioner and

9    inferior officers below do not have delegated authority." Dkt. 29 at 10.

10    Plaintiff's argument is similar to arguments the plaintiffs raised and the Court rejected in

11    *Seila Law* and *Collins*. First, like the plaintiffs in *Seila Law*, Plaintiff here argues § 902(a)(3)'s

12    removal provision automatically renders all agency action unconstitutional. The Court in *Seila*

13    *Law* rejected such an argument observing one section of a statute may violate the Constitution without

14    rendering the entire act void. *Seila Law*, 140 S. Ct. at 2209. The Court stated the removal limitation of the

15    CFPB Director is the only defect and removal of the defect removes the constitutional violation. The

16    Court concluded the removal limitation was severable because the CFPB is capable of functioning

17    independently of the infirm removal clause. *Id.* at 2209 ("The provisions of the Dodd-Frank Act bearing

18    on the CFPB's structure and duties remain fully operative without the offending tenure restriction. Those

19    provisions are capable of functioning independently, and there is nothing in the text or history of the

20    Dodd-Frank Act that demonstrates Congress would have preferred no CFPB to a CFPB supervised by the

    President."); *see also* 140 S. Ct. at 2245.[2]

21

22

23    _____
     [2] Four Justices dissented from Chief Justice Roberts's lead opinion holding the CFPB removal provision was
     unconstitutional, but agreed that "*if* the agency's removal provision is unconstitutional, it should be severed." *Id.* at
     2245 (Kagan, J., concurring in the judgment with respect to severability and dissenting in part).

     ORDER REVERSING AND REMANDING THE CASE FOR FURTHER
     PROCEEDINGS - 12

Similarly, if the removal clause in § 902(a)(3) is severed, the SSA remains fully functional. This is evident because there can be no dispute that since the promulgation of § 902(a)(3), the SSA has continued to function fully and has granted and denied thousands of benefits applications. Indeed, Plaintiff 's suggestion there is no need to "unwind favorable decisions" made by the SSA notwithstanding § 902(a)(3) infirm removal clause, supports this conclusion. Dkt. 29 at 12. The Court concludes, just as the Court in *Seila Law* found, that § 902(a)(3)'s removal clause is the only constitutional defect in this case. The clause is severable because if removed the constitutional violation disappears, and the SSA remains fully operational and functional without the infirm tenure provision.

The Supreme Court in *Collins* also rejected the argument an invalid removal provision rendered the FHFA's actions void from the outset. The Supreme Court stated there was "no reason to hold that the third amendment must be completely undone." *Collins, supra.* at 1788. The *Collins* Court further stated "[a]lthough the statute unconstitutionally limited the President's authority to *remove* the confirmed Directors, there was no constitutional defect in the statutorily prescribed method of appointment to that office. As a result, there is no reason to regard any of the actions taken by the FHFA [challenged on appeal] as void.")*. Collins*, at 1787. Accordingly, the argument the SSA's actions here are either void *ab initio* or became void at some later point due to § 902(a)(3)'s removal clause is not supported by either *Seila Law* or *Collins*.

While the Supreme Court in both *Seila Law* and *Collins* held an unconstitutional removal clause does not automatically void agency action and mandate reversal, the Court in *Collins* addressed whether reversal is appropriate if harm could be shown. The *Collins* Court found it was "possible for an unconstitutional provision to inflict compensable harm," and the "possibility that the unconstitutional restriction on the President's power to remove a Director of the FHFA could have such an effect cannot be ruled out." 141 S. Ct. at 1788–89.

1    In her reply brief, Plaintiff argues "[Commissioner] Saul's actions, under constitutional

2  authority or not, have caused specific harm by undermining, politicizing and reducing due

3  process protections to Plaintiff's claims." Dkt. 29 at 9. This argument that there is a possibility §

4  902(a)(3) harmed Plaintiff fails to recognize the significant difference between the agency action

5  in *Collins* and the SSA action here.

6    In *Collins*, the Directors of the FHFA adopted an amendment (the "Third Amendment")

7  to certain financial agreements that "materially changed the nature of the agreements" and

8  resulted in the companies in which plaintiffs were shareholders transferring to the U.S. Treasury

9  "at least $124 billion dollars more than the companies would have had to pay" under the prior

10  form of the agreements. *Id.* at 1774. The plaintiffs in *Collins* thus had an identifiable basis to

11  contend that but for the unconstitutional removal provision, the President may have removed and

12  appointed a different Director who would have disapproved of the adoption (or implementation)

13  of the Third Amendment. *See id.* at 1789.

14    In contrast, there is nothing showing the Commissioner or the SSA implemented new and

15  relevant agency action that may have turned upon the President's inability to remove the

16  Commissioner. Plaintiff has not identified any new regulations, agency policies or directives

17  Commissioner Saul installed that may have affected her claims. Plaintiff thus fails to show how

18  or why § 902(a)(3) removal clause possibly harmed her.

19    There is also nothing showing former President Trump would have removed

20  Commissioner Saul and appointed a new Commissioner who would have administered this

21  Plaintiff's claims differently. Rather, former President Trump appointed Commissioner Saul, and

22  was still in office on January 13, 2021, when the ALJ's decision that Plaintiff challenges was

23  issued. *See* Tr. 1463. The record also does not reflect Plaintiff requested or sought review of the

ORDER REVERSING AND REMANDING THE CASE FOR FURTHER
PROCEEDINGS - 14

1   ALJ's decision at issue here in the Appeals Council.[3] Thus Plaintiff's argument the "efforts of the

2   Appeals Council to exhaust Plaintiff's administrative remedies lack any presidential authority," is

3   unsupported as Plaintiff did not seek such a remedy. Dkt. 29 at 11-12.  Accordingly, because

4   there is no evidence, the former President sought to remove Commissioner Saul, there is no

5   connection between § 902(a)(3)'s removal clause and possible harm the removal clause might

6   have caused Plaintiff.  *Cf. Collins,* 141 S. Ct. at 1802 (Kagan, J. concurring) ("[G]iven the

7   majority's remedial analysis, I doubt the mass of SSA decisions—which would not concern the

8   President at all—would need to be undone. . . . When an agency decision would not capture a

9   President's attention, his removal authority could not make a difference.").

10          Even assuming § 902(a)(3)'s removal clause prevented former President Trump from

11   removing Commissioner Saul and confirming a different Commissioner, there is no possibility §

12   902(a)(3) harmed Plaintiff. This is because the final decision of the Commissioner that is before

13   the Court for review is the ALJ's decision. The ALJ's decision in this case is based upon an

14   uncontested factual record and the application of governing law, including unchallenged

15   regulations. The ALJ's decision and the administrative record are both subject to judicial review

16   by this Court. The specific Commissioner who heads the SSA or any directive the Commissioner

17   gave regarding Plaintiff's case would not alter the viability of the ALJ's decision in this case.

18   This is because the Court has reviewed the record and the ALJ's decision at issue and concludes

19   the ALJ harmfully erred in discounting Dr. Goold's opinions and parts of Plaintiff's testimony,

20   and that the case should be reversed for these reasons. Had the Court found otherwise and

21   determined the ALJ's decision was supported by substantial evidence and free of legal error, the

22

23   ---
[3] The record shows Plaintiff sought review in the Appeals Council of the earlier 2016 ALJ decision. The Appeals Council's action in the earlier case is not at issue in Plaintiff's present request for review of the case before the Court. Tr. 1-7; and Tr. 1654-58.

ORDER REVERSING AND REMANDING THE CASE FOR FURTHER
PROCEEDINGS - 15

1   Court would have affirmed the Commissioner's final decision. Hence, the Court reaches its

2   decision to reverse or affirm the Commissioner's final decision notwithstanding the existence of

3   § 902(a)(3)'s removal clause, who the Commissioner was at the time the decision became final,

4   or what directives the Commissioner may have given the ALJ. The Court thus concludes there is

5   no possibility § 902(a)(3)'s removal clause harmed Plaintiff in this case.

6       Plaintiff also mentions in her reply brief the Commissioner's actions reduced "due

7   process protections." Dkt. 29 at 9. *Seila Law* and *Collins* addressed infirm removal provisions

8   that the Court found violate separation of powers, not due process; these cases thus provide no

9   basis to support a due process claim. Additionally, a conclusory allegation that due process was

10  denied is not sufficient to raise a colorable constitutional claim. *See e.g. Hoye v. Sullivan,* 985

11  F.2d 990, 992 (9th Cir. 1992).

12      In sum, the Court finds § 902(a)(3)'s unconstitutional removal clause does not

13  automatically void the actions of the SSA or the Commissioner's final decision in this case.

14  Reversal is not mandated under *Seila Law* or *Collins* because § 902(a)(3)'s removal clause is

15  severable, and because there is no possibility § 902(a)(3)'s removal clause harmed Plaintiff.

16  Based upon the Court's review of the administrative record and the ALJ's decision the Court

17  finds the ALJ erred in discounting Dr. Goold's opinion and a portion of Plaintiff's testimony.

18  This finding is not contingent upon or affected by § 902(a)(3) and Plaintiff thus fails to show the

19  removal provision in § 902(a)(3) is connected to the ALJ's decision denying her benefits. *See*

20  *Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1138 (9th Cir. 2021) ("[T]here is no link between

21  the ALJ's decision awarding benefits and the allegedly unconstitutional removal provisions. And

22  nothing commands us to vacate the decisions below on that ground.")).

23

1   The Court accordingly concludes that while § 902(a)(3) violates separation of powers, the

2   violation is not grounds to reverse the Commissioner's final decision and remand the matter in

3   this case. Rather, the basis of the Court's determination to reverse the Commissioner's final

4   decision is the Court's independent review of the administrative record and the ALJ's decision,

5   and the Court's conclusion the ALJ harmfully erred in discounting Dr. Goold's opinions and

6   Plaintiff's testimony regarding her physical limitations.

### CONCLUSION

8   For the foregoing reasons, the Commissioner's final decision is **REVERSED,** and this

9   case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C §

10  405(g). As discussed above, the Court affirms the ALJ's assessment of the opinions of Drs.

11  Wheeler and Cunningham, and that portion of Plaintiff's testimony regarding her mental health

12  limitations. The Court however finds the ALJ erred in discounting Dr. Goold's opinions and that

13  portion of Plaintiff's testimony regarding her physical limitations. Accordingly, on remand the

14  ALJ shall reassess Dr. Goold's opinions and the portion of Plaintiff's testimony regarding her

15  physical limitations; develop the record and reassess Plaintiff's RFC as needed, and proceed to

16  the remaining steps of the disability evaluation process as appropriate.

17  DATED this 8th day of November, 2021.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge

ORDER REVERSING AND REMANDING THE CASE FOR FURTHER
PROCEEDINGS - 17